# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LORENZO E. RUBIO, )<br>as next friend for Z.R., a minor, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TURNER UNIFIED SCHOOL DISTRICT )<br>NO. 202, et al., )<br>)<br>Defendants. )<br>)<br>_____) | CIVIL ACTION<br><br>No. 05-2522-KHV |

## MEMORANDUM AND ORDER

Lorenzo E. Rubio, as next friend and father of Z.R., a minor, filed suit against the Turner Unified School District No. 202, the district superintendent, the Turner Board of Education, its members, and the principal and several teachers at Endeavor Alternative School. Plaintiff alleges that by prohibiting students from speaking Spanish at Endeavor Alternative School, defendants violated Z.R.'s rights under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.[1] This matter is before the Court on Defendants' Motion To Dismiss (Doc. #6) filed January 24, 2006; Defendants' Motion For Sanctions (Doc. #20) filed February 17, 2006; and Defendants' Motion To Strike Plaintiff's Amended

---

[1] In plaintiff's first three complaints (Docs. #1, 3 and 5) filed December 12, 13 and 16, 2005, plaintiff also asserted claims for race and national origin discrimination under the Kansas Act Against Discrimination (Count III), civil conspiracy under Kansas common law (Count IV) and violation of Z.R.'s procedural due process rights under K.S.A. § 72-8902 (Count V). In response to the pending motion to dismiss, plaintiff concedes that his state law claims are premature because he did not give notice of the claims under K.S.A. § 12-105(b). See Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #27) filed February 28, 2006 at 4-5. Accordingly, the Court sustains defendants' motion to dismiss as to Counts III, IV and V.

Complaint (Doc. #32) and Plaintiff's Motion For Leave To File Amended Complaint (Doc. #33), both filed March 6, 2006. For reasons set forth below, except as to plaintiff's Title VI claim against the School District, the Court sustains defendants' motion to dismiss as to all claims and all defendants. In addition, the Court sustains defendants' motion to strike, sustains in part plaintiff's motion to amend and overrules defendants' motion for sanctions.

## Standards For Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). The Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences from those facts in favor of plaintiff. See Shaw v. Valdez, 819 F.2d 965, 968 (10th Cir. 1987). In reviewing the sufficiency of plaintiff's complaint, the issue is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although plaintiff need not precisely state each element of his claims, he must plead minimal factual allegations on those material elements that must be proved. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

## Factual Background

Plaintiff's amended complaint alleges the following facts:[2]

---

[2] For purposes of defendants' motion to dismiss, the relevant complaint is plaintiff's Amended Complaint (December 16, 2005) (Doc. #5).

Shortly after defendants filed their motion to dismiss, plaintiff filed another amended complaint. See

(continued...)

2

Plaintiff is the father and next friend for Z.R., a minor who attends high school at Endeavor Alternative School ("Endeavor") in the Turner Unified School District No. 202 (the "District"). Bobby Allen is the district superintendent. Jennifer Watts is the principal and Susan Serzyski is a teacher at Endeavor.

During the 2005-06 school year, Watts, Serzyski and other teachers at Endeavor repeatedly prohibited Z.R. and others of Hispanic origin from speaking Spanish on school premises. During the school lunch hour, on November 28, 2005, Watts told Z.R. not to speak Spanish. One school period later, Serzyski ordered Z.R. not to speak Spanish in the hallway and told him to go to the principal's office. Watts then told Z.R. that he was not in Mexico and that he should speak only English on the school premises. Watts immediately suspended Z.R., told him to call his father and ordered him to leave school immediately to begin his out-of-school suspension. Later that day, Watts gave plaintiff a document which stated that Z.R. could not speak Spanish on school premises and that he was suspended for doing so.

The following morning, November 29, 2005, plaintiff went to the superintendent's office and left a copy of Watts' written statement that Z.R. was not to speak Spanish on the school premises. Allen later contacted plaintiff and asked if he had retained a copy of Watts' written statement.

---

[2](...continued)
Amended Complaint (February 28, 2006) (Doc. #29). Defendants ask the Court to strike that amended complaint because it was filed without leave of court. See Defendants' Motion To Strike Plaintiff's Amended Complaint (Doc. #32) filed March 6, 2006. Pursuant to D. Kan. Rule 6.1(d)(1), plaintiff had until March 20, 2006 to respond to this motion. Pursuant to D. Kan. Rule 7.4, "[i]f a respondent fails to file a response within the time required by Rule 6.1(d), the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice." For this reason and substantially the reasons stated in Defendants' Motion To Strike Plaintiff's Amended Complaint (Doc. #32), the Court sustains defendants' motion.

On December 12, 2005, plaintiff filed suit against the District, Allen, Watts, Serzyski, the Turner Board of Education, the individual members of the Turner Board of Education, and Does 1 through 5, unknown teachers at Endeavor. Plaintiff alleges that because of race and national origin, defendants prohibited Z.R. from speaking Spanish at school and suspended him. Plaintiff alleges that because Z.R.'s suspension remains in his school records, defendants violated Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., by depriving Z.R. of potential educational and employment opportunities. See Count I of the Amended Complaint (December 16, 2005) (Doc. #5).[3] Under 42 U.S.C. § 1983, plaintiff alleges that defendants violated Z.R.'s right to equal protection under the Fourteenth Amendment. See Count II of the Amended Complaint (December 16, 2005) (Doc. #5).

Defendants seek to dismiss plaintiff's claims because (1) the claims against the superintendent, board members and teachers acting in their official capacities merely duplicate the claims against the District; (2) the Turner Board of Education lacks the capacity to be sued under Kansas law; (3) the complaint does not state a claim against the Doe defendants; (4) the District cannot be liable under Section 1983 for the acts by Watts because she lacked final policymaking authority; (5) plaintiff has not stated an equal protection claim because outside the educational setting, English-only policies have been upheld; (6) Watts and Serzyski are entitled to qualified immunity on plaintiff's claim under Section 1983; and (7) Title VI applies only to intentional discrimination and the District cannot be held liable for the acts

---

[3] Count I asserts that all defendants violated Title VI, but plaintiff now concedes that his claim is proper only against the District. See Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #27) filed February 28, 2006 at 4. Therefore the Court sustains defendants' motion to dismiss Count I as to all defendants except the District.

of a school principal under a theory of respondeat superior.[4]

## Analysis

**I.   Official Capacity Claims**

Plaintiff has filed suit against the superintendent and the individual board members only in their official capacities. Plaintiff has filed suit against Watts, Serzyski and Does 1 through 5 in their official and

---

[4] Defendants attempt to introduce facts beyond the complaint, including the District's equal opportunity and nondiscrimination policies, the Endeavor student handbook and the fact that the District has no policy which prohibits students from speaking Spanish in schools. Generally, a court may not look beyond the four corners of the complaint when deciding a Rule 12(b)(6) motion to dismiss. Dean Witter Reynolds, Inc. v. Howsam, 261 F.3d 956, 961 (10th Cir. 2001), rev'd on other grounds, 534 U.S. 1161 (2002); Lassiter v. Topeka Unified Sch. Dist. No. 501, 347 F. Supp.2d 1033, 1040 (D. Kan. 2004). When a movant presents matters outside the pleadings, the Court has discretion to convert a Rule 12(b)(6) motion into one for summary judgment. See Lybrook v. Members of the Farmington Mun. Sch. Bd. of Educ., 232 F.3d 1334, 1341-42 (10th Cir. 2000). Because defendants filed their motion at an early stage of the proceedings and the parties have not engaged in discovery, the Court declines to consider evidence outside the pleadings. Accordingly, the Court will treat defendants' motion solely as one to dismiss under Rule 12(b)(6).

Defendants argue that the Court can take judicial notice of public records in deciding a motion to dismiss. See Reply In Support Of Defendants' Motion To Dismiss (Doc. #42) filed March 23, 2006 at 2 (citing Stahl v. U.S. Dep't Of Agriculture, 327 F.3d 697 (8th Cir. 2003)). On a motion to dismiss, the Court may consider (1) indisputably authentic copies of documents if plaintiff referred to them in the complaint and the documents are central to the claims; and (2) facts which are subject to judicial notice. See GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997) (if document is referred to in complaint but not attached to it, and is central to plaintiff's claim, defendant may submit indisputably authentic copy to be considered on motion to dismiss); Fed. R. Evid. 201(b) (judicially noticed fact must be one not subject to reasonable dispute in that it is either generally known within territorial jurisdiction of trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned). Defendant's extrinsic evidence does not fall into either category. Cf. Balfour v. Medicalodges, Inc., No. 05-2086-KHV, 2006 WL 314521, at *5 n.4 (D. Kan. Feb. 9, 2006) (judicial notice that 2004 was a leap year); Jones v. Wildgen, 320 F. Supp.2d 1116 (D. Kan. 2004) (judicial notice of portions of City Code in action challenging constitutionality of municipal ordinances); Grogan v. O'Neil, 292 F. Supp.2d 1282, 1292 (D. Kan. 2003) (judicial notice of corporate exculpatory charter provision where defendant presented certified copy on file with secretary of state; articles of incorporation attached to defendants' motion to dismiss not considered).

5

personal capacities. Defendants argue that the claims against the individuals acting in their official capacities should be dismissed because they duplicate the claims against the District. The Court agrees, because official capacity suits are merely another way of pleading an action against the entity of which an officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165 (1985). As long as the government entity receives notice and an opportunity to respond, an official capacity suit is treated as a suit against it. Id. at 165-66. In suits in which a government entity is a party, the Court has previously dismissed official capacity claims against individuals who are sued in their official capacities. See Sims v. Unified Gov't of Wyandotte County, 120 F. Supp.2d 938, 945 (D. Kan. 2000) (official capacity claims dismissed as redundant). The Court therefore dismisses all claims against the individual defendants in their official capacities.

**II.     Turner Board Of Education As Separate Defendant**

The Turner Board of Education concedes that it is the governing body of the Turner USD No. 202, but argues that as a matter of law, it lacks capacity to sue or be sued under Kansas law. Under Kansas law, a school district can sue and be sued in the name of the unified school district. See K.S.A. § 72-8201. A local unified school district in Kansas is considered a municipality for tax and budget purposes. See K.S.A. § 72-8204a. As the governing body of the unified school district, the board of education has final decision-making authority for the district. Without specifically addressing the issue, Kansas courts have permitted local school boards to sue and be sued as a separate legal entities. See, e.g., Unified Sch. Dist. No. 501, Shawnee County, Kan. v. Baker, 269 Kan. 239, 6 P.3d 848 (2000) (school district and board as plaintiffs); Bd. of Educ. of Unified Sch. Dist. No. 443, Ford County v. Kan. State Bd. of Educ., 266 Kan. 75, 966 P.2d 68 (1998) (board as plaintiff); Lanning By & Through Lanning v. Anderson, 22 Kan. App.2d 474, 921 P.2d 813 (1996) (board as defendant); Ware v. Unified Sch. Dist. No. 492, 902 F.2d

815 (10th Cir. 1990) (school district and board as defendants). Even so, because the board of education is merely the governing body of the school district and is not a separate legal entity, any judgment against the board necessarily is against the school district. As with claims against individuals acting in their official capacities for a school district, a claim against a sub-unit of a school district is the equivalent of a suit against the school district itself. A suit against both entities is duplicative. See Whayne v. State of Kan., 980 F. Supp. 387, 391-92 (D. Kan. 1997) (municipal police department is only sub-unit of city government and is not subject to suit); Foskey v. Vidalia City Sch., 574 S.E.2d 367, 370 (Ga. Ct. App. 2002) (municipal board of education, unlike school district it manages, not body corporate and lacks capacity to sue or be sued); see also Willmschen v. Trinity Lakes Improvement Ass'n, 840 N.E.2d 1275, 1280-81 (Ill. App. Ct. 2005) (corporate board of directors not distinct and separate legal entity); Flarey v. Youngstown Osteopathic Hosp., 783 N.E.2d 582, 585 (Ohio Ct. App. 2002) (nonsensical to hold board of directors liable as collective entity). The Court therefore sustains the motion to dismiss of the Turner Board of Education.

### III.   Doe Defendants

Defendants argue that plaintiff's amended complaint does not state a claim on which relief can be granted as to Does 1 through 5 in their personal capacities. In the amended complaint, plaintiff alleges:

> 8.   Defendants Does 1 through 5, inclusive, "Does" or "Defendants" herein, are Teachers at Endeavor Alternative School; however, their true names are unknown to Plaintiff, therefore Plaintiff sues such Defendants by fictitious name. Plaintiff will amend his complaint to show the true names of the unknown Defendants when such information has been reasonably ascertained. Each is sued in his or her official capacity.
>
> 9.   Each Doe Defendant is in some manner responsible, liable and obligated to [Z.R.] for the wrongful acts to which reference is made herein and thereby proximately caused, or contributed to the acts or acts taken against [Z.R.] as alleged herein. As a result, each

7

> Doe Defendant is in some manner likewise liable, responsible and obligated to [Z.R.] for all damages and consequences pertaining to the injuries sustained as alleged in the complaint.

Amended Complaint (December 16, 2005) (Doc. #5) ¶¶ 8-9.  Plaintiff has not responded to defendants' argument on this ground.  Because plaintiff has not set forth minimal factual allegations on the material elements that must be proved as to Does 1 through 5, the Court dismisses the personal capacity claims against them.  See Hall, 935 F.2d at 1110.

### IV.   Equal Protection Claim

Section 1983 prohibits those acting under color of state law from depriving others of their federal rights.  Plaintiff claims that by prohibiting students from speaking Spanish at school, defendants violated Z.R.'s right to equal protection under the Fourteenth Amendment.

#### A.   Liability Of The District

The District argues that it cannot be liable on plaintiff's Section 1983 claim because it is not liable for the actions of an administrator acting in his official capacity unless the administrator has final policymaking authority.  See Defendants' Memorandum In Support Of Motion To Dismiss (Doc. #7) at 20-21.  The District maintains that because the Board of Education is the final policymaker for the District and because that authority cannot be delegated under Kansas law, the District cannot be held liable under Section 1983 for the actions of a school principal.  See id.

Under Section 1983, the District cannot be liable for the acts of its employees and agents on a theory of vicarious liability or respondeat superior.  See Monell v. Dep't of Social Servs., 436 U.S. 658, 692 (1978); Sauers v. Salt Lake County, 1 F.3d 1122, 1129 (10th Cir. 1993).  The District can be liable under Section 1983 only if an official custom or policy caused a violation of plaintiff's constitutional rights,

see Monell, 436 U.S. at 694; Graham, 473 U.S. at 165-66, or an individual with final policymaking authority made the decision which violated his constitutional rights, see Pembaur v. City of Cincinnati, 475 U.S. 469, 481-84 (1986) (single decision by official responsible for establishing final policy may give rise to municipal liability); Jantz v. Muci, 976 F.2d 623, 630 (10th Cir. 1992) (same), cert. denied, 508 U.S. 952 (1993).[5]

In the complaint, plaintiff only alleges that the District is vicariously liable for the acts of Watts and Serzyski under the doctrine of respondeat superior. See Amended Complaint (December 16, 2005) (Doc. #5) ¶¶ 15, 32. As explained above, such a theory is not permitted under Section 1983. See Monell, 436 U.S. at 692; Sauers, 1 F.3d at 1129. In plaintiff's opposition brief, however, he contends that final "decision making authority" extends to Watts as principal.[6] See Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #27) at 20-21. As explained above, the relevant question is who had "policymaking" authority, not "decision making" authority. See Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1250 (10th Cir. 1999) (to impose liability under Section 1983, complaint must

---

[5] In the relevant complaint (Doc. #5), plaintiff does not allege any failure to train by the District. Even if he did so, a municipality can be liable only when its failure to train reflects a "deliberate or conscious choice" to ignore serious risks to a person's health and safety. City of Canton v. Harris, 489 U.S. 378, 388-89 (1989); see Myers v. Okla. County Bd. of County Commr's, 151 F.3d 1313, 1318 (10th Cir. 1998). The proposed amended complaint does not allege (1) that the District made a deliberate or conscious choice not to train or supervise its employees or (2) that the District ignored serious risks to health and safety. Therefore the proposed amended complaint does not state a cause of action for failure to train.

[6] Plaintiff has not alleged a District custom which prohibits Spanish on school property. The Supreme Court has defined municipal customs that may give rise to Section 1983 liability as those discriminatory practices by city officials which are so "persistent and widespread" that they essentially have the force of law. Monell, 436 U.S. at 690-91 (quoting Adickes v. S .H. Kress & Co., 398 U.S. 144, 167-68 (1970)).

indicate that principal or teachers possessed "final policymaking authority" as to decision specific to particular situation); see also Pembaur, 475 U.S. at 482-83 (fact that particular official – even a policymaking official – has discretion in exercise of particular functions does not without more give rise to municipal liability based on exercise of that discretion; official must be responsible for establishing final government policy respecting such activity before municipality can be liable); Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247-48 (5th Cir. 2003) (school board did not have authority to delegate policymaking authority for safety and security to principal; recognizing distinction between "decision-making authority" and "policymaking authority" required to sustain liability under Section 1983).

The complaint alleges that Watts made the decision to suspend Z.R., but plaintiff does not allege that Watts had "final authority" under state law to establish policy with respect to the challenged action. Jantz, 976 F.2d at 630 (citations omitted); see City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988) (going along with discretionary decisions of subordinates not delegation of policymaking authority); Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37, 260 F.3d 602, 619-20 (4th Cir. 2000) (bare allegations of complaint insufficient to conclude that superintendent, principal or president of school board was final policymaker); Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 523-24 (superintendent and school officials not final policymakers because their decisions subject to review by school board); Denno v. Sch. Bd. of Volusia County, 218 F.3d 1267, 1277 (11th Cir. 2000) (process allowing parents to appeal principal's decision to assistant superintendent and ultimately school board sufficient to strip principal of final policymaking authority); Jantz, 976 F.2d at 631 (delegation of authority must be absolute to give rise to "final authority"); Brandt v. Bd. of Educ. of City of Chicago, 420 F. Supp.2d 921, 937 (N.D. Ill. 2006) (even though principal had discretion to make decisions pursuant to district policies and regulations, school

board rules did not confer authority for principals to make district-wide policies); cf. Ware, 902 F.2d at 818 (school board has final hiring authority under Kansas law and cannot delegate such authority to subordinates).

Relying on Smith v. Barber, No. 01-2179-CM, 2002 U.S. Dist. LEXIS 5159, at *34-35 (D. Kan. Mar. 22, 2002), plaintiff argues that a school district is liable for the unconstitutional conduct of its employees. Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #27) at 22. Plaintiff ignores the fact that in Barber, the complaint adequately alleged that the principal and superintendent were "policy setting official[s]" for the school district and that they violated plaintiffs' rights in "setting district policy." Barber, 2002 U.S. Dist. LEXIS 5159, at *13. Here, plaintiff's complaint does not contain such allegations.

Plaintiff also maintains that the Tenth Circuit has held that a principal's actions bind a school district. See Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #27) at 22 (citing Bryant v. Indep. Sch. Dist. No. I-38, 334 F.3d 928 (10th Cir. 2003)). Bryant addressed a Title VI claim, not a claim under Section 1983. Nothing in Bryant suggests that a school principal is conclusively considered a final policymaker for purposes of school district liability under Section 1983.

Finally, plaintiff argues that Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998), "conclusively establishes Plaintiff's right to hold the school district liable for the conduct of its principal at Endeavor Alternative School." Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #27) at 21. Gebser addressed a school district's liability under Title IX, however, not under Section 1983

Because plaintiff has not alleged that as principal, Watts has final policymaking authority, the Court

11

dismisses plaintiff's claim against the District under Section 1983.[7]

### B.     Liability Of Watts And Serzyski In Personal Capacities

To state a Section 1983 claim for violation of the Equal Protection Clause of the Fourteenth Amendment, plaintiff must show that defendant acted with the intent to discriminate against Z.R. because of his membership in a protected class. Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted). The Equal Protection Clause is triggered when the government treats someone differently than another who is similarly situated. Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth., 933 F.2d 853, 859 (10th Cir. 1991) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)); see Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 659 (10th Cir. 2006) (equal protection is direction that all persons similarly situated be treated alike).

Defendants argue that plaintiff has not stated an equal protection claim because courts have consistently upheld English-only policies outside the educational setting.[8] See Defendants' Memorandum

---

[7]     A principal has final decision making authority as to many matters in a school, but generally lacks final policymaking authority sufficient to hold the district liable under Section 1983. As explained above, even if the school board delegates policymaking authority to the principal on certain matters, the principal lacks *final* policymaking authority if his or her decision is subject to review by the superintendent or school board. See Riddick, 238 F.3d at 523-24; Denno, 218 F.3d at 1277.

Here, plaintiff does not allege that the District delegated final policymaking authority to Watts as to either the "No Spanish" policy or the suspension of Z.R. Indeed, plaintiff does not contest defendants' assertion that less than one day after Watts suspended Z.R., the superintendent rescinded the suspension.

In his proposed amended complaint, plaintiff alleges that Watts had authority to end the "No Spanish" policy at Endeavor. See Amended Complaint (February 28, 2006) (Doc. #27-2) ¶ 45. Plaintiff, however, does not allege that Watts' decision on the issue was final.

[8]     Defendant also argues that plaintiff has not alleged that defendants treated any non-Hispanic student differently. See Defendants' Memorandum In Support Of Motion To Dismiss (Doc. #7) filed January 24, 2006 at 17. The Court disagrees. Plaintiff has alleged that defendants "single[d] out students of Hispanic origin and target[ed] such students for attributes based upon race or national origin, specifically

(continued...)

12

In Support Of Motion To Dismiss (Doc. #7) filed January 24, 2006 at 17-20. English-only policies, however, are not inherently non-discriminatory as a matter of law. The Equal Employment Opportunity Commission ("EEOC") has noted that (1) English-only workplace rules which have no exceptions (such as at lunch or on breaks) are a "burdensome term and condition of employment" which constitute a Title VII violation; and (2) English-only workplace rules that apply only at certain times do not violate Title VII if the employer can justify the rule by showing business necessity. EEOC, Speak-English-Only rules, 29 C.F.R. § 1606.7. English-only workplace policies may "create an atmosphere of inferiority, isolation, and intimidation" that creates a discriminatory environment. Maldonado v. City of Altus, 433 F.3d 1294, 1305 (10th Cir. 2006) (quoting 29 C.F.R. § 1606.7). Such policies may adversely impact employees with limited or no English skills, and the risk of discipline for violating English-only policies falls disproportionately on bilingual employees and those with limited English skills. Id. Likewise, in a Title VII hostile work environment case, the Tenth Circuit noted that "the disparate impact of [an] English-only rule (creation of a hostile work environment) is in itself evidence of intent." Id. at 1308.

Here, plaintiff alleges that with no exceptions, defendants prohibited students from speaking Spanish on school grounds. See Amended Complaint (December 16, 2005) (Doc. #5) ¶ 13. Because the risk of discipline for violating such rules falls disproportionately on those students who speak Spanish and limited English, plaintiff has sufficiently alleged a violation of Z.R.'s rights under the equal protection clause. See

---

[8](...continued)
to include the denial of the right of Hispanic students to interact in their native language on their own time in the hallways, the school cafeteria, or while on school grounds." Amended Complaint (December 16, 2005) (Doc. #5) ¶ 30. By alleging that defendants singled out students of Hispanic origin, plaintiff has sufficiently alleged differential treatment.

Maldonado, 433 F.3d at 1305.

Watts and Serzyski assert that they are entitled to qualified immunity on plaintiff's claim under Section 1983. Qualified immunity safeguards government officials who perform discretionary functions unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1255 (10th Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The purpose of qualified immunity is to avoid excessive disruption of governmental functions and to dispose of frivolous claims in the early stages of litigation. Saucier v. Katz, 533 U.S. 194, 201 (2001). It protects all but the plainly incompetent or those who knowingly violate the law. Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001), cert. denied, 535 U.S. 1056 (2002) (internal quotations and citations omitted). It is an immunity from suit rather than a mere defense to liability. Saucier, 533 U.S. at 200-01 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Consequently, courts should resolve the purely legal question raised by a qualified immunity defense at the earliest possible stage in litigation. Siegert v. Gilley, 500 U.S. 226, 232 (1991); Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995).

In the context of Rule 12(b)(6), the Court's review of the qualified immunity defense is limited to the pleadings. See Dill v. City of Edmond, 155 F.3d 1193, 1203 (10th Cir. 1998). In reviewing the pleadings, the Court construes in plaintiff's favor the allegations of the complaint and any reasonable inferences to be drawn therefrom. See id. To survive a motion to dismiss, plaintiff must first allege facts which show that defendants violated a constitutional right. Siegert, 500 U.S. at 231. As explained above, plaintiff has done so with respect to his claim that Watts and Serzyski violated Z.R.'s rights under the equal protection clause.

14

Plaintiff must next show that the violated right was "clearly established" at the time of the conduct. Id. at 232. For a law to be clearly established, "there must be a Supreme Court or other Tenth Circuit decision on point, or the clearly established weight of authority from other circuits must have found the law to be as the plaintiff maintains." Moore v. Guthrie, 438 F.3d 1036, 1042 (10th Cir. 2006) (citations omitted). It is not required that "the very action in question has previously been held unlawful," but in the light of pre-existing law the unlawfulness must be apparent. Anderson v. Creighton, 483 U.S. 635, 639 (1987). In Maldonado, the Tenth Circuit and the district court stated that the particularized right asserted by plaintiffs was the right to speak a foreign language in the workplace. Maldonado, 433 F.3d at 1315. Here, the particularized right asserted by plaintiff is the right to speak a foreign language at a public school.

Plaintiff has not cited any case (Supreme Court, Tenth Circuit or otherwise) which establishes a right to speak a foreign language at a public school. The Court is not aware of any such case. In addition, many courts have suggested that at least in the employment context, English-only rules are permissible. See id. at 1315-16 (employer entitled to qualified immunity where no Supreme Court or Tenth Circuit case established right to speak foreign language in workplace and published authority from other circuits suggested English-only rules not discriminatory as applied to bilingual speakers).[9] Because plaintiff has not shown that the right to speak a foreign language at a public school was clearly established at the time of the alleged conduct by Watts and Serzyski, those defendants are entitled to qualified immunity on the Section 1983 claims against them in their individual capacities.

---

[9] Even if Maldonando were in the educational context, plaintiff cannot rely on that decision because it was not decided until January 11, 2006, some six weeks after the challenged conduct in this case.

## V.     Title VI Claim Against The District

Title VI is a general prohibition against discrimination by federally funded programs.[10]  See id. at 1302.  The District argues that plaintiff does not state a claim under Title VI because (1) Title VI applies only to intentional discrimination; and (2) the District cannot be liable for the acts of a school principal under a theory of respondeat superior.  See Defendants' Memorandum In Support Of Motion To Dismiss (Doc. #7) at 24-25.  As to defendants' first argument, plaintiff alleges that by enacting an English-only practice at Endeavor, defendants (including Watts) acted intentionally and/or with reckless indifference to Z.R.'s rights under Title VI.  See id. ¶¶ 13e., 26.  Plaintiff has sufficiently alleged intentional discrimination.

As to defendants' second argument, the Court finds that a school district can be liable for the acts of a school principal where the principal is an "appropriate person" under Title VI.  Title VI defines an "appropriate person" as an official of the entity with authority to take corrective action to end the discrimination.  See 42 U.S.C. § 2000d-1.  In Gebser, the Supreme Court examined an identical provision under Title IX.  Gebser held that the school district could not be liable for the sexual harassment of an individual teacher because the district (including the school principal) did not know of the teacher's misconduct.  Id. at 291.  Gebser implied, however, that if the principal knew of the teacher's misconduct,

---

[10]     Section 601 of Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  Private individuals may sue to enforce Section 601 of Title VI and obtain both injunctive relief and damages.  Alexander v. Sandoval, 532 U.S. 275, 279 (2001).  Title VI further states that no action shall be taken until the department or agency concerned has advised the "appropriate person" of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. 42 U.S.C. § 2000d-1.  Under an identical provision in Title IX, the Supreme Court has held that unless an "appropriate person" has actual knowledge of the alleged discrimination and fails to adequately respond to such discrimination, a damage remedy will not lie.  See Gebser, 524 U.S. at 290.

the district could be liable. See id. (information insufficient to alert principal to possibility of teacher's sexual relationship with student). Here, plaintiff alleges that Watts, as principal, knew of the teacher's misconduct and participated in it. Because Watts had the authority to take corrective action to end the alleged discrimination, she qualifies as an "appropriate person" for purposes of liability on the District under Title VI. The Court therefore overrules defendants' motion to dismiss plaintiff's claim under Title VI as to the District.

**VI.     Motion To Amend**

After defendants filed their motions to dismiss and strike plaintiff's amended complaint, plaintiff filed a motion to amend the complaint. See Plaintiff's Motion For Leave To File Amended Complaint (Doc. #33) filed March 6, 2006. Plaintiff seeks to slightly modify his equal protection and Title VI claims, to drop his state law claims, to add claims under Section 1983 for violation of Z.R.'s rights to free speech and due process, and to add a retaliation claim under Title VI. Defendants respond that leave to amend would be futile because the claims are subject to dismissal for the reasons stated in their motion to dismiss. Defendants also have set forth why the three additional claims in plaintiff's proposed amended complaint are subject to dismissal. Plaintiff has not filed a reply which addresses defendants' arguments.

Leave to amend is a matter committed to the sound discretion of the district court. See First City Bank. N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127 (10th Cir. 1987). Rule 15(a), Fed. R. Civ. P., provides that "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Absent flagrant abuse, bad faith, futility of amendment, or truly inordinate and unexplained delay, prejudice to the opposing party is the key factor in deciding a motion to amend. See Lange v. Cigna Individual Fin. Servs. Co., 759 F. Supp. 764,

769 (D. Kan. 1991). A proposed amendment is futile if the amended complaint would be subject to dismissal. Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., 175 F.3d 848, 859 (10th Cir. 1999).

As to plaintiff's proposed claims under Section 1983 for violation of Z.R.'s rights to free speech and due process, defendants correctly note that these claims are subject to dismissal for the same reasons as plaintiff's equal protection claim under Section 1983. As noted, Watts and Serzyski are entitled to qualified immunity and plaintiff does not allege that Watts had such final policymaking authority that the District might be liable for her conduct under Section 1983..

As to plaintiff's proposed retaliation claim under Title VI (because he filed this lawsuit, defendants more closely scrutinized his school work, and disciplined and threatened him), such a claim appears to be viable against the District. Plaintiff alleges that Watts, as principal, had notice of the alleged misconduct and actually participated in it. The Court therefore sustains plaintiff's motion to amend his claim against the District under Title VI.[11]

The Court sustains in part plaintiff's motion to amend. On or before **October 12, 2006**, plaintiff may file an amended complaint in compliance with this order.

## VII.   Motion For Sanctions

Defendants ask the Court to impose sanctions under Rule 11, Fed. R. Civ. P., because plaintiff had

---

[11]   Plaintiff has not explained how he can maintain a retaliation claim under Title VI against the individual defendants in their personal capacities. Claims under Title VI are only proper against the entity which receives federal financial assistance, not individual employees of that entity. See Walden v. Moffett, No. CV-F-04-6680, 2006 WL 947738, at *9 (E.D. Cal. Apr. 12, 2006); Sims, 120 F. Supp.2d at 954; Jackson v. Katy Indep. Sch. Dist., 951 F. Supp. 1293, 1298 (S.D. Tex. 1996).

18

no good faith basis to assert the claims in this action. More specifically, defendants assert that plaintiff should have dismissed his claims after they provided case law which demonstrates that they were not liable on any of the claims. Rule 11 provides that by signing the complaint, plaintiff's counsel certifies that "it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" and "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal or existing law or the establishment of new law." Fed. R. Civ. P. 11(b).

If the Court finds a Rule 11 violation, it must impose some form of sanction. See Eisenberg v. Univ. of N.M., 936 F.2d 1131, 1136 (10th Cir. 1991). The Court has wide discretion, however, in selecting an appropriate sanction. Id. Rule 11 sanctions serve several purposes, including (1) deterring future litigation abuse; (2) punishing present litigation abuse; (3) compensating victims of litigation abuse; and (4) streamlining court dockets and facilitating case management. Id. The appropriate sanction should be the least severe sanction adequate to deter and punish plaintiff. Id. at 684 (quoting White v. Gen. Motors Corp., 908 F.2d 675, 684 (10th Cir. 1990), cert. denied, 498 U.S. 1069 (1991)).

As to the Title VI claim against the District, the Court has overruled defendants' motion to dismiss and sanctions are not appropriate. As to the Section 1983 claim against Watts and Serzyski, sanctions are not appropriate because plaintiff has stated an equal protection claim even though defendants are entitled to qualified immunity on that claim. The question whether the relevant law was clearly established is sufficiently close that sanctions are not warranted. As to some of the remaining claims, the issue of sanctions presents a close call. Plaintiff's counsel could have done a better job of teasing out the legitimate claims and identifying the appropriate defendants. At the same time, the Court cannot say that the claims

were brought for an improper purpose or that counsel did not have a good faith belief that the claims were warranted by a nonfrivolous argument for the extension, modification, or reversal or existing law or the establishment of new law. Accordingly, the Court overrules defendants' motion for sanctions.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss (Doc. #6) be and hereby is **SUSTAINED in part**. Count I is dismissed as to all defendants except the Turner Unified School District No. 202. Counts II through IV are dismissed as to all defendants. Plaintiff's sole remaining claim is against the Turner Unified School District No. 202 under Title VI.

**IT IS FURTHER ORDERED** that Defendants' Motion For Sanctions (Doc. #20) filed February 17, 2006 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants' Motion To Strike Plaintiff's Amended Complaint (Doc. #32) filed March 6, 2006 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Leave To File Amended Complaint (Doc. #33) filed March 6, 2006 be and hereby is **SUSTAINED in part**. On or before **October 12, 2006**, plaintiff may file an amended complaint which alleges claims of discrimination and retaliation by the Turner Unified School District No. 202 in violation of Title VI. Plaintiff's motion is otherwise overruled.

Dated this 28th day of September, 2006 at Kansas City, Kansas.

                                                  s/ Kathryn H. Vratil
                                                  KATHRYN H. VRATIL
                                                  United States District Court