## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ZACHARIAH F. RUBIO,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 05-2522-KHV** |
| TURNER UNIFIED SCHOOL DISTRICT | ) | |
| NO. 202, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

Zachariah F. Rubio claims that Turner Unified School District No. 202 violated his rights

under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. by discriminating against

him on the basis of national origin and race and retaliating against him for complaining of such

discrimination.[2]  See Pretrial Order (Doc. #98) filed October 2, 2007 at 8-9.  This matter is before

_____

[1]     Lorenzo E. Rubio, plaintiff's father, originally filed suit as next friend for plaintiff.
On February 20, 2007, defendant filed notice that because plaintiff turned 18 years of age, he should
be substituted as the sole plaintiff in the case.  See Suggestion Of Compentency Of Plaintiff Z.R.
On The Record Pursuant To Rules 17(a) and 25(b) (Doc. #61) filed February 20, 2007. Plaintiff has
not filed any opposition on this issue.  Accordingly, the Court substitutes Zachariah Rubio as the
sole plaintiff in this case.

[2]     Plaintiff originally sued the district superintendent, the Turner Board of Education,
its members, and the principal and several teachers at Endeavor Alternative School under 42 U.S.C.
§ 1983 and Title VI.  On September 28, 2006, the Court dismissed plaintiff's claims against these
defendants.  See Memorandum And Order (Doc. #45).  The Court granted plaintiff leave to file an
amended complaint to assert discrimination and retaliation claims only against the District under
Title VI.  See id.

In plaintiff's first three complaints (Docs. #1, 3 and 5) filed December 12, 13 and 16, 2005,
plaintiff also asserted claims for race and national origin discrimination under the Kansas Act
Against Discrimination (Count III), civil conspiracy under Kansas common law (Count IV) and
violation of Z.R.'s procedural due process rights under K.S.A. § 72-8902 (Count V).  In response
to defendants' motion to dismiss, plaintiff conceded that his state law claims were premature
because he did not give notice of the claims under K.S.A. § 12-105(b).  See Plaintiff's Memorandum
(continued...)

the Court on <u>Defendant's Motion For Summary Judgment</u> (Doc. #75) and <u>Defendant's Motion To</u>

<u>Strike Plaintiff's Claims Based on 34 C.F.R. Part 100 From The Proposed Pretrial Order, Or In The</u>

<u>Alternative, Dismiss Any Such Claims</u> (Doc. #77), both filed June 1, 2007.  For reasons stated

below, the Court sustains defendant's motion for summary judgment in part and overrules

defendant's motion to strike as moot.

<b><u>Summary Judgment Standards</u></b>

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c);

<u>accord</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Vitkus v. Beatrice Co.</u>, 11 F.3d

1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome

of the suit under the governing law."  <u>Anderson</u>, 477 U.S. at 248.  A "genuine" factual dispute

requires more than a mere scintilla of evidence.  <u>Id.</u> at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of

material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hicks v. City of Watonga</u>, 942

F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the

nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters

for which it carries the burden of proof."  <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>,

912 F.2d 1238, 1241 (10th Cir. 1990); <u>see also</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio</u>

---

[2](...continued)
<u>In Opposition To Defendants' Motion To Dismiss</u> (Doc. #27) filed February 28, 2006 at 4-5.
Accordingly, the Court sustained defendants' motion to dismiss Counts III, IV and V.  <u>See</u>
<u>Memorandum And Order</u> (Doc. #45).

-2-

Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

### Factual Background

For purposes of defendant's motion for summary judgment, the following facts are uncontroverted, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.

Turner Unified School District No. 202 (the "District") is a unified school district and governmental subdivision of the State of Kansas. Plaintiff attended high school at Endeavor Alternative School ("Endeavor") in the District. Endeavor is an alternative school of approximately 60 students. Under K.S.A. § 72-9201, it provides an educational alternative for students from schools throughout the District who are educationally challenged or otherwise troubled. Plaintiff's first language is English, but he speaks both Spanish and English at home.

School principals are the building administrators and report directly to Bobby Allen, the

District superintendent.  Principals are not authorized to set policies for each building.  The District has not had a policy which prohibits students from speaking Spanish in its schools.  Even so, Jennifer Watts, the principal at Endeavor, had a policy that students could not speak Spanish in the building.  Watts admits that such a policy violated District policy.

The Board of Education establishes District policies.  In its programs and activities, the District prohibits discrimination on the basis of race, color, national origin, sex, disability, age and religion.  A similar policy was included in the Endeavor student handbook and on the District web site.  Plaintiff understood District policy and knew that he should report discrimination to Allen.

Plaintiff attended Turner High School in the 2003-04 academic school year.  From August 28, 2003 through December 3, 2004, he received some 21 discipline referrals for disrupting class, telling his teacher to shut up, skipping detention, cursing during class, etc., and received discipline including warnings, detention and in-school suspension.  In December of 2004, plaintiff was placed on probation for the remainder of the academic year due to excessive disciplinary referrals in the fall semester.  At his request, in the spring semester, plaintiff transferred to Endeavor because he was concerned about graduating on time.  During the spring semester, he spoke Spanish to other students and was sent to the office once for doing so.  Plaintiff did not report this incident to school administration and he does not recall the details of this incident.

From January 19 through March 9, 2005, plaintiff received six discipline referrals for not complying with teacher instructions, a verbal conflict with another student, cursing during class and other misconduct.  Depending on the offense, plaintiff received a warning or an in-school suspension.  From September 23 through November 11, 2005, plaintiff received three disciplinary referrals for disrupting class.  On each occasion, plaintiff was retained in the office until the end of

class.

During the lunch period on November 28, 2005, Cheryl Waters, the secretary for Watts, told plaintiff and another student to stop playing ball.  Plaintiff then spoke to the other student in Spanish.  As soon as he did so, Waters told them "Okay, then you guys both go to the office."  When they reached the office at approximately 12:05 p.m., Susan Serzyski, a teacher, told plaintiff and the other student to stop speaking Spanish.  Waters instructed both plaintiff and the other student to behave and told them to go back to class.  Plaintiff and the other student then spoke to each other in Spanish in the office, but did not receive any discipline.

After plaintiff returned to class, Arnold Mallory, his science teacher, took the class into the hallway for a restroom break.  Plaintiff started to talk in Spanish with another student.  Serzyski, who happened to be in the hallway, overheard plaintiff and told him to go to the office.  She then pushed the button to call the office and said "Ms. Watts, I'm sending Zach up there to speak Spanish to you."[3]

Plaintiff went straight to the office.  When he arrived, Watts told him to call his father and said that she was suspending him for speaking Spanish after staff instructed him not to do so.[4]  Watts did not consult Serzyski before suspending plaintiff.

Plaintiff's father then met with Watts.  Watts explained that plaintiff was being disruptive in not complying with a teacher's request not to speak Spanish and that she was suspending him for

---

[3]     Serzyski did not send the other student to the office, but she did not hear anyone conversing with plaintiff.

[4]     In some six years as principal of Endeavor, Watts instructed only plaintiff not to speak Spanish.  Before the incident with plaintiff, teachers had told plaintiff and other students not to speak Spanish.

the rest of the day and the next day.  At 12:50 p.m., plaintiff returned home and took a nap.

At approximately 1:00 p.m., plaintiff's father left a message for Allen about the suspension. At approximately 1:30 p.m., Allen called Watts and informed her that he was overturning the suspension because the District had no policy against students speaking Spanish.  Allen verbally reprimanded Watts.  Allen then called plaintiff's father and told him that the principal could not suspend plaintiff for speaking Spanish and that the problem was being addressed.  Plaintiff's father understood that the District had rescinded plaintiff's suspension.  At approximately 2:00 p.m., Watts completed a discipline referral and noted that plaintiff could return the next day.  Serzyski did not prepare a disciplinary referral on the incident.  After plaintiff woke from his nap, he returned to Endeavor at 2:20 p.m. to pick up a copy of the discipline referral from Watts.  Watts told him that he was not suspended and that he could return to school the next day.  The school day ended at 2:30 p.m.

The discipline referral which Watts prepared on November 28, 2005 was not part of plaintiff's permanent record.  Allen explained this to plaintiff's father when they talked that day.[5] Disciplinary referrals are not part of a student's permanent file.  Because plaintiff was sent home, he missed approximately one and a half hours of school – the last part of his science class and his A+ lab class.[6]

On November 29, 2005, plaintiff stayed home because he did not feel comfortable returning

_____

[5]   District policy allows parents an opportunity for a hearing to challenge the content of their child's school records to ensure that the records are not inaccurate or misleading, and to correct or delete inaccurate, misleading or inappropriate data.

[6]   In the A+ lab class, students did their homework on a computer.  Plaintiff passed the A+ lab class.

to school.

On December 5, 2005, Allen sent plaintiff's family a written apology.  Allen also met personally with plaintiff and apologized for the incident.

Plaintiff is not aware of any educational opportunity which the District denied him.  He did miss one class and part of another on the day of his suspension, but he suffered no lost employment opportunities and sought no medical treatment on account of the incident.

From December 5 through 12, 2005, several news agencies broadcast reports or published articles concerning the incident on November 28.  On December 9, 2005, the District issued a press release concerning the incident.  Three days later, plaintiff filed suit against the District, Allen, Watts, Serzyski, the Board of Education, the individual members of the Board of Education, and Does 1 through 5, unknown teachers at Endeavor.  After receiving notice of the suit, Allen told Watts, Serzyski and Miller not to treat plaintiff differently than other students.  Watts also instructed Endeavor teachers not to target plaintiff or treat him differently in any way.

On December 20, 2005, the Board of Education adopted a resolution which reaffirmed the District's goal of including all ethnic languages, values and traditions.  The resolution also stated that communications between students in their native tongue have been and would continue to be accepted, provided that they do not interfere with the educational process.

On January 18, 2006, Brenda Miller, a teacher at Endeavor, gave plaintiff a discipline referral for not complying with instructions and talking back.[7]  Plaintiff was retained in the office for the rest of the class period.

_____

[7]     Plaintiff admits that three of his teachers (Greg Barnard, Valarie Klein and Mallory) did not retaliate against him.  Between January and May of 2006, he received four discipline referrals from Barnard, seven from Klein and one from Mallory.

On February 9, 2006, Katie DeHart, a teacher, gave plaintiff a discipline referral for disrupting her class and referring to her as "girly." Plaintiff, however, did not refer to DeHart as girly.

The District utilizes an online computerized system called Infinite Campus which allows staff to publish information such as a student's discipline record, transcripts and state assessment information. Parents can access it online. In February of 2006, in a posting on the parent portal of Infinite Campus, Miller noted that plaintiff had accused her of discriminating against him. Miller communicated in writing because plaintiff's parents had a hard time understanding English. Plaintiff's parents are not computer literate, however, and they had no access to the Internet. Plaintiff's father did not receive instructions or a password to use the parent portal.

On February 10, 2006, in the school hallway, plaintiff asked Miller why she had misrepresented facts in her posting to his parents. Miller told plaintiff that he was trying to teach her some kind of lesson, which plaintiff understood to be a reference to his lawsuit.[8] Plaintiff was very disrespectful and loud. DeHart came out of her office to help Miller, who instructed plaintiff to go to class. Plaintiff refused to do so. Miller and plaintiff went to the office. Waters, Serzyski and DeHardt also went in the office and shut the door. Waters called plaintiff's father and the high school administrator because Watts was not present that day. In the office, plaintiff did not comply with staff instructions to sit down and turn over his cell phone. The four staff members harassed plaintiff and attacked him verbally. Plaintiff attempted to call his father. Miller was with plaintiff in the office when his father and the assistant principal arrived. Plaintiff was not physically

---

[8]     Miller was not a defendant in the suit and before the incident on February 10, 2006, her conduct was not at issue in it.

restrained from leaving the office.

Plaintiff later admitted to Watts that he made an inappropriate comment to Miller. Watts believes that plaintiff admitted that he had called Miller a liar. On February 13, 2006, Watts gave plaintiff a one-day suspension for the incidents on February 9 and 10. Watts stated that the number of referrals on those two days influenced her decision to suspend plaintiff.

On February 22, 2006, Serzyski gave plaintiff a discipline referral for wrestling with another student in the hallway. The principal talked with plaintiff and sent him back to class.

In February or March of 2006, Allen met with plaintiff's father and step-mother to discuss the discipline referrals which plaintiff had received since November 28, 2005. Plaintiff's father stated that he knew his son caused problems in school at times but wanted his son to be treated fairly. After the meeting, Watts told Allen that plaintiff was intentionally pushing Endeavor staff to the limits and that staff was reacting as they would to any other student.

On April 13, 2006, Miller gave plaintiff a discipline referral for disrupting class for three days. Plaintiff denies that he engaged in this behavior. Watts gave plaintiff a warning.

On April 17, 2006, Miller gave plaintiff a discipline referral for talking and interfering with class. Plaintiff was retained in the office for the rest of the class period.

On April 19, 2006, Miller gave plaintiff a discipline referral for bouncing golf balls in the hallway as he was walking to class. Plaintiff told Miller that the golf balls were for a science project in Mallory's class. Miller asked Mallory whether plaintiff was supposed to be bouncing the golf balls in the hall for the project. Mallory told Miller that that was not part of the project. Watts gave plaintiff a two day out of school suspension for the incident.

On April 26, 2006, Waters gave plaintiff a discipline referral for disrupting classes, but

plaintiff was simply retrieving a notebook and rubber band from a friend.  Plaintiff did not receive any discipline.

On May 9, 2006, Serzyski gave plaintiff a discipline referral for wrestling with a student in the hallway.  Plaintiff received a warning.

On May 10, 2006, Miller gave plaintiff a discipline referral for disrupting class and refusing to read.  Plaintiff was retained in the office for the rest of the class period.

On May 11, 2006, Miller gave plaintiff a discipline referral for cursing.  Plaintiff does not recall this incident, but he received a warning.

On May 17, 2006, Miller gave plaintiff a discipline referral for talking during class and being disruptive.  Plaintiff received a warning and was retained in the office for the rest of the class period.

Plaintiff earned a number of credits toward graduation at Endeavor.  He transferred back to Turner High School for the 2006-07 school year, and does not allege any retaliation after he returned to Turner.  Plaintiff graduated from Turner on May 20, 2007.  He did not apply to any colleges or other post-secondary institutions.

Plaintiff testified that between November 28 and December 12, 2005, when he filed suit, Endeavor teachers gave him bad looks.  After he filed suit, the bad looks and animosity got worse.

Plaintiff never reported any alleged retaliation to Watts or Allen.  He never reported Miller's alleged retaliation because he thought that everybody at Endeavor already knew about it.

In this suit, plaintiff's remaining claims are that the District engaged in (1) national origin and race discrimination in violation of Title VI when Serzyski sent him to the office for speaking Spanish on November 28, 2005, and (2) retaliation when teachers verbally attacked him on February 10, 2006 and gave him an increased number of discipline referrals.  See Pretrial Order

(Doc. #98) filed October 2, 2007 at 8-9.  The District seeks summary judgment on both claims.[9]

Plaintiff seeks money damages for pain and suffering, mental and emotional distress, and missed

classes during his suspension.[10]

### Analysis

### I.      National Origin And Race Discrimination (Count I)

Plaintiff alleges that the District is liable under Title VI for a hostile environment based on

national origin and race because Serzyski sent him to the office for speaking Spanish on one

occasion, November 28, 2005.  The District argues that it did not have notice of the alleged

discrimination and that when it received such notice, it took adequate remedial measures.

Title VI generally prohibits discrimination by federally funded programs.  See id. at 1302.

Section 601 of Title VI provides that "[n]o person in the United States shall, on the ground of race,

color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected

to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C.

§ 2000d.  Private individuals may sue to enforce Section 601 of Title VI and obtain both injunctive

relief and damages.  Alexander v. Sandoval, 532 U.S. 275, 279 (2001).  Title VI further states that

---

[9]      Defendant also argues that the Court lacks personal jurisdiction over it because plaintiff did not properly serve defendant.  Plaintiff correctly notes that defendant waived this argument because it failed to file a motion to dismiss on the issue by the deadline set forth in the scheduling order.  See Scheduling Order (Doc. #51) filed November 29, 2006 at 2, 8 (motions to dismiss for lack of personal jurisdiction shall be filed by February 2, 2007); see also Edwards v. Cass County, Tex., 919 F.2d 273, 275 (5th Cir. 1990) (district court has discretion to disallow filing of dispositive motion that does not comply with scheduling order); Gear v. Constantinescu, 741 F. Supp. 525, 526 (D.N.J. 1990) (defendant waived defense of lack of personal jurisdiction because he did not comply with scheduling order deadline).

[10]      Plaintiff originally sought injunctive relief including the removal of Serzyski, Miller, DeHart and Watts.  In his opposition to defendant's motion, plaintiff concedes that his request for injunctive relief is moot because he has graduated.  See Plaintiff's Opposition (Doc. #90) at 43.

no action shall be taken until the department or agency concerned has advised the "appropriate person" of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. 42 U.S.C. § 2000d-1. Under an identical provision in Title IX, the Supreme Court has held that unless an "appropriate person" has actual knowledge of the alleged discrimination and fails to adequately respond to such discrimination, a damage remedy will not lie. See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998).[11]

Here, the District can be liable for the acts of teachers at Endeavor if Watts had actual notice of the conduct and did not take corrective action to end the alleged discrimination. As the Court explained in a prior order, Gebser implied that a school district can be liable where a principal knows of teacher misconduct. See Memorandum And Order (Doc. #45) at 16-17; Gebser, 524 U.S. at 291 (information insufficient to alert principal to possibility of teacher's sexual relationship with student); see also Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 360 (3d Cir. 2005) (school principal entrusted with responsibility and authority normally associated with that position ordinarily will be "appropriate person" under Title IX).

In the pretrial order, plaintiff asserts that the District discriminated against him by creating a hostile school environment when Serzyski sent him to the office for speaking Spanish on November 28, 2005.[12] See Pretrial Order (Doc. #98) at 9-10; see also Plaintiff's Opposition

---

[11]     Gebser noted that Title IX was modeled after Title VI which is "parallel to Title IX except that it prohibits race discrimination, not sex discrimination, and applies in all programs receiving federal funds, not only in education programs." Id. at 286. "The two statutes operate in the same manner conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." Id.

[12]     Broadly construed, plaintiff also attempts to asserts discrimination claims based on
(continued...)

Memorandum (Doc. #90) at 30-31.  To establish a prima facie case of hostile environment under Title VI, plaintiff must show that (1) he is a member of a protected class; (2) the harassment was based on race, color or national origin; (3) defendant had actual knowledge of and was deliberately indifferent to the harassment; and (4) the harassment was so severe, pervasive and objectively offensive that it deprived plaintiff of access to the educational benefits or opportunities provided by the school.[13]  See Bryant v. Indep. Sch. Dist. No. I-38, 334 F.3d 928, 934 (10th Cir. 2003); Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1246 (10th Cir. 1999); see also Hurde v. Jobs Plus-Med, 299 F. Supp.2d 1196, 1211 (D. Kan. 2004) (Title VII hostile work environment).

---

[12](...continued)
Watts' policy which prohibited students from speaking Spanish and Watts' decision to suspend plaintiff for speaking Spanish after being told not to do so.  In a prior order, the Court sustained defendant's motion to dismiss Count I – to the extent that it is based on acts of discrimination by Watts – because plaintiff did not plead that an "appropriate person" other than Watts had actual notice of her conduct.  See Memorandum And Order (Doc. #58) at 7-9.  Title VI contains no reference to an institution's "agents" and therefore does not expressly call for application of agency principles.  Gebser, 524 U.S. at 283 (analyzing Title IX); cf. Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir. 1993) (under Title VII, employer may be liable for supervisor's conduct even absent knowledge of such conduct).  Because a school district's liability under Title VI rests on actual notice principles, "the knowledge of the wrongdoer h[er]self is not pertinent to the analysis." Gebser, 524 U.S. at 291 (citing Restatement (Second) of Agency § 280 (1957)); id. at 287-88 (citing Rosa H. v. San Elizario Indep. Sch. Dist., 106 F.3d 648, 654 (5th Cir. 1997)) (by accepting federal funds, school board agreed not to discriminate; unlikely that Congress envisioned liability where recipient unaware of discrimination); see also Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 643 (1999) (high standard imposed in Gebser sought to eliminate risk that recipient would be liable in damages not for its own official decision but for employee's independent actions) (citing Gebser, 524 U.S. at 290-91); Gebser, 524 U.S. at  285 (purposes of Title IX would be frustrated if damage remedy lies against school district for teacher's sexual harassment of student based upon principles of respondeat superior or constructive notice, i.e. absent actual notice to school district official). Accordingly, plaintiff cannot assert a claim based on (1) the Endeavor "no Spanish" policy, which Watts created, or (2) his suspension from school, which Watts imposed without consulting Serzyski.

[13]     The District cites Bryant for the proposition that to establish a prima facie case, plaintiff must show that defendant treated him differently than similarly situated students outside the protected class.  See Defendant's Memorandum (Doc. #82) at 51.  Such a requirement applies, if at all, to disparate treatment claims, which plaintiff does not assert in this case.

Defendant argues that plaintiff cannot establish the third element, i.e. that the District had actual knowledge of and was deliberately indifferent to the alleged harassment.[14]  The District's argument is not well taken as to plaintiff's remaining claim, i.e. that Serzyski sent plaintiff to the office for speaking Spanish on one occasion.  In Count I, plaintiff alleges that the District had actual knowledge of and was deliberately indifferent to Serzyski's harassment, i.e. sending plaintiff to Watts for speaking Spanish.  Plaintiff states that Serzyski was the wrongdoer and that Watts, and therefore the District, was deliberately indifferent to her conduct and essentially ratified Serzyski's conduct by suspending plaintiff from school.  See Gebser, 524 U.S. at 291 (in some circumstances, notice to principal may suffice); Bostic, 418 F.3d at 360 (school principal entrusted with responsibility and authority normally associated with that position ordinarily "appropriate person" under Title IX).  Accordingly, plaintiff can satisfy the third element of a prima facie case as to his remaining discrimination claim.

In its reply brief, the District argues that a single incident cannot support a viable hostile environment claim.  See Defendant's Reply (Doc. #96) at 23-24.  Defendant apparently maintains that plaintiff cannot establish the fourth element of a prima facie case, i.e. the harassment was so severe, pervasive and objectively offensive that it deprived plaintiff of access to the educational benefits or opportunities provided by the school.  Without addressing whether a single incident can ever be sufficient to establish a hostile environment, defendant's argument appears to be well taken as to the single incident in this case.  Cf. Chavez v. New Mexico, 397 F.3d 826, 832 (10th Cir. 2005)

---

[14]     Defendant also argues that even if plaintiff can establish a prima facie case of hostile environment, he cannot show that the District's articulated reason for sending him to the office is pretextual.  Defendant's argument applies only to the extent plaintiff asserts a disparate treatment claim.  As explained elsewhere, plaintiff has limited his discrimination claim to one based solely on a hostile environment.

(two racially offensive comments fell far short of hostile work environment); Sprague v. Thorn Ams., Inc., 129 F.3d 1355, 1366 (10th Cir. 1997) (five separate incidents of unpleasant and boorish behavior over 16 months insufficient to create actionable hostile environment).  Plaintiff argues that by sending plaintiff to Watts, Serzyski caused plaintiff to miss classes for the remainder of the day on November 28, 2005.  See Plaintiff's Opposition (Doc. #90) at 37.  As explained above, however, plaintiff only missed classes because Watts gave him a discipline referral and suspended him. Serzyski did not give plaintiff a discipline referral and at most, he missed a few minutes of class because she sent him to the office.  Directing a student to go to the school office for speaking Spanish and even commenting on the incident to fellow students does not appear to rise to harassment so severe, pervasive and objectively offensive that it deprived plaintiff of access to educational benefits or opportunities provided by the school.  Defendant, however, first raised this argument in its reply brief.  The Court will not consider new arguments in a party's reply brief.  See Mondaine v. Am. Drug Stores, Inc., 408 F. Supp.2d 1169, 1203 (D. Kan. 2006); Thurston v. Page, 931 F. Supp. 765, 768 (D. Kan. 1996); see also Mike v. Dymon, Inc., No. 95-2405-EEO, 1996 WL 427761, at *2 (D. Kan. July 25, 1996) (in fairness, court generally summarily denies or excludes all arguments and issues first raised in reply briefs).  Therefore, although the Court overrules defendant's motion for summary judgment on plaintiff's national origin and race discrimination claim, the Court directs plaintiff to show cause in writing on or before **November 9, 2007 at 5:00 p.m.** why the Court should not grant summary judgment in favor of defendant on plaintiff's national origin and race discrimination claim because the alleged harassment was not so severe, pervasive and objectively offensive that it deprived plaintiff of access to the educational benefits or opportunities provided by the school.

-15-

## II.      Retaliation Claim (Count II)

Plaintiff alleges that because he filed this lawsuit, the District retaliated by giving him excessive discipline referrals which ultimately resulted in two suspensions.  The District argues that plaintiff cannot establish a prima facie case of retaliation.

As explained above, Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Title VI does not specifically prohibit retaliation, but courts generally imply a private cause of action for retaliation based on the statute's general prohibition of intentional discrimination.  See Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74 (2005) (Title IX).[15]  The District can be liable for retaliation by teachers at Endeavor if Watts had actual notice of the conduct and did not take corrective action to end the alleged retaliation.[16]  To

---

[15]      Title VI implementing regulations state as follows:

Intimidatory or retaliatory acts prohibited.  No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this part.

34 C.F.R. § 100.7(e).  In Jackson, the Supreme Court interpreted an identical regulation under Title IX and held that the statute's general prohibition of intentional discrimination contained the necessary prohibition on retaliation.  See Jackson, 544 U.S. at 178.  The Court therefore only considers the implied statutory prohibition of retaliation.  See Alexander, 532 U.S. at 285 (Title VI does not include private right to enforce implementing regulations).

[16]      In a prior order, the Court sustained defendant's motion to dismiss Count II, to the extent that it is based on acts of retaliation by Watts, because plaintiff did not plead that an "appropriate person" other than Watts had actual notice of her conduct.  See Memorandum And Order (Doc. #58) at 9.  The Court therefore need not address plaintiff's allegations that in retaliation

(continued...)

establish a prima facie case of retaliation under Title VI, plaintiff must show (1) that he engaged in protected activity under Title VI; (2) that he suffered adverse action contemporaneous with or subsequent to such activity; (3) a causal nexus between the protected activity and the adverse action; and (4) the District knew of the retaliation and did not adequately respond.  See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1202 (10th Cir. 2006) (Title VII); Peters v. Jenney, 327 F.3d 307, 319 (4th Cir. 2003) (Title VI); see also Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 67 (1st Cir. 2002) (Title IX); Murray v. N.Y. Univ. Coll. of Dentistry, 57 F.3d 243, 248 (2d Cir. 1995) (adopting Title VII standards for Title IX retaliation claims).

Plaintiff does not precisely identify which allegedly adverse actions constitute proof of retaliation.  As best the Court can ascertain, plaintiff alleges as follows: (1) on February 10, 2006, four Endeavor staff members retained him in the school office while they harassed him and prepared multiple discipline referrals on the same incident; and (2) after he filed this lawsuit, Endeavor teachers gave him an increased number of discipline referrals.  See Plaintiff's Opposition (Doc. #90) at 41-42 (onslaught of write-ups which led to suspension; multiple teachers cornered plaintiff and alluded to lawsuit while refusing his requests to call his father; extreme number of write-ups resulting in two suspensions); Pretrial Order (Doc. #98) at 7 (systematically targeted plaintiff to intimidate him; increased number of write-ups; razor-thin scrutiny; teachers cornered him while simultaneously creating multiple write-ups which Watts used to suspend him).  The District argues that (1) plaintiff did not suffer an adverse action which excluded him from participation, denied him the benefit of, or subjected him to discrimination under a program receiving federal financial

---

[16](...continued)
for the filing of this lawsuit, Watts suspended him on February 13 and April 19, 2006.

assistance; (2) plaintiff has not shown a causal connection between the filing of this lawsuit and any adverse action; and (3) the District was not on notice of any alleged retaliation. The Court addresses these arguments with respect to each alleged adverse action.

A.    Staff Members Retaining Plaintiff In School Office On February 10, 2006

The District argues that as a matter of law, plaintiff did not suffer adverse action when Endeavor staff members retained him in the office. In particular, defendant maintains that plaintiff was not excluded from participation in, denied the benefits of, or subjected to discrimination in education. Here, plaintiff testified vaguely that during the temporary detention, four staff members harassed him and attacked him verbally. Plaintiff has shown at most that Endeavor staff orally reprimanded him more severely than necessary on a single occasion and then prepared written discipline referrals on the incident. Viewing the evidence in the light most favorable to plaintiff, such action may constitute an adverse action because it amounts to discrimination in education.[17] The Court therefore finds that plaintiff has shown sufficient "adverse action" for purposes of a prima facie case.

The District also argues that plaintiff has not shown a causal connection between the filing of his lawsuit and the incident on February 10, 2006 which culminated in his suspension. To establish a causal connection between the filing of a lawsuit and adverse action, plaintiff may proffer

_____

[17]    At this stage, the Court need not address whether the adverse action must be education-related. Plaintiff does not address this issue. Recently, the Supreme Court held that Title VII's anti-retaliation provision should be broadly construed to prohibit all retaliation, not solely employment-related retaliation. See Burlington N. & Santa Fe Ry. Co. v. White, --- U.S. ----, 126 S. Ct. 2405, 2412-13 (2006). The Supreme Court, however, reached this conclusion in part because Title VII includes a separate anti-retaliation provision. As explained above, Title VI does not specifically prohibit retaliation, but courts imply such a cause of action based on the statute's general prohibition of intentional discrimination.

"evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." <u>Haynes v. Level 3 Commc'ns, LLC</u>, 456 F.3d 1215, 1228 (10th Cir. 2006), <u>cert. denied</u>, 127 S. Ct. 1372 (2007). The Tenth Circuit has held that for purposes of establishing a prima facie case, a one and one-half month period between protected activity and adverse action may, by itself, establish causation. <u>See</u> <u>Anderson v. Coors Brewing Co.</u>, 181 F.3d 1171, 1179 (10th Cir. 1999); <u>see also</u> <u>Haynes</u>, 456 F.3d at 1228 (standing alone, temporal proximity between protected activity and retaliatory conduct must be "very close in time"). Here, plaintiff filed suit on December 12, 2005. Approximately two months later, on February 10, 2006, Serzyski – who was involved in the suspension which led to the filing of the lawsuit – was also involved in retaining plaintiff in the office and preparing a discipline referral. On this record, the close temporal proximity between the filing of plaintiff's lawsuit and his detention in the school office is sufficient to establish causation for purposes of a prima facie case. <u>See</u> <u>Webb v. Level 3 Commc'ns, LLC</u>, 167 Fed. Appx. 725, 735 (10th Cir. Jan. 25, 2006) (assuming that two months is sufficient to establish causation for prima facie case), <u>cert. denied</u>, 127 S. Ct. 72 (2006); <u>Arnett v. Univ. of Kan.</u>, 371 F.3d 1233, 1240 (10th Cir. 2004); <u>Conner v. Schnuck Mkts., Inc.</u>, 121 F.3d 1390, 1395 (10th Cir. 1997); <u>Ramirez v. Okla. Dep't of Mental Health</u>, 41 F.3d 584, 596 (10th Cir. 1994).

Finally, the District argues that plaintiff cannot meet the last element of a prima facie case because Watts and Allen did not know of any alleged retaliation by Endeavor staff members and in any event, took steps to prevent such retaliation. Plaintiff maintains that school officials "knew or should have known of the retaliation" and did not take appropriate steps to address such retaliation. <u>See</u> <u>Plaintiff's Opposition</u> (Doc. #90) at 41. Plaintiff apparently argues that because all four staff members who were involved in the incident on February 10, 2006 prepared discipline referrals,

Watts was on notice that the staff members were retaliating against plaintiff for the lawsuit. Plaintiff offers no evidence, direct or circumstantial, which would substantiate this claim. In addition, plaintiff never notified Watts that staff members were retaliating against him for filing a lawsuit. Indeed, plaintiff admitted to Watts that he had made an inappropriate comment to Miller on February 10, 2006. After receiving notice of the suit in December of 2005, Allen told Watts, Serzyski and Miller not to treat plaintiff differently than other students. Watts also instructed Endeavor teachers not to target plaintiff or treat him differently in any way.

Plaintiff argues that in late February or early March of 2006, his parents met with Allen regarding the "extreme retaliation and intimidation by teachers . . . with the principal doing nothing." Plaintiff's Opposition (Doc. #90) at 43. Plaintiff does not specify the type of retaliation which his parents discussed with Allen. The record reflects that plaintiff's father told Allen that he knew that his son caused problems in school at times but that he did not think that his son was being treated fairly. Based on the testimony cited by plaintiff, plaintiff's parents did not specifically tell Allen that staff retained plaintiff in the office and verbally harassed him on February 10, 2006 or that they thought that his suspension based on that incident was retaliatory. Allen told Watts that plaintiff's father was concerned that his son was not being treated fairly. Watts explained that plaintiff was intentionally pushing Endeavor staff to the limits and that staff was reacting as they would to any other student. In his opposition brief, plaintiff has not specified any acts of retaliation which occurred after his parents met with Allen.

In sum, based on the record evidence, no reasonable jury could find that the District had notice that Endeavor staff members retained plaintiff in the office on February 10, 2006 in retaliation for the filing of this lawsuit and failed to take adequate steps to address any such retaliation.

B.      Increased Number Of Discipline Referrals

In his opposition to defendant's motion, plaintiff only refers to the events surrounding the incident on February 10, 2006 including his subsequent suspension on February 13, 2006. Because plaintiff has not attempted to set forth a prima facie case based on the increased number of discipline referrals after February 13, 2006, the Court finds that plaintiff has waived any such claim. In addition, as to these subsequent disciplinary referrals, defendant's motion is well taken because the record does not reflect (1) any casual connection between the filing of this lawsuit and these disciplinary referrals; or (2) that Watts or Allen had notice of any alleged retaliation in this regard and failed to adequately address such retaliation.[18] The Court therefore sustains defendant's motion for summary judgment to the extent plaintiff asserts a retaliation claim based on the increased number of discipline referrals.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #75) filed June 1, 2007 be and hereby is **SUSTAINED in part**. The Court sustains defendant's motion on plaintiff's retaliation claim. The Court overrules defendant's motion on plaintiff's

---

[18]      Defendant also argues that even if plaintiff can establish a prima facie case of retaliation, he cannot show that the District's articulated reason for the oral reprimand, written referrals and suspension was pretextual. The Court need not address this alternative argument because the first issue is dispositive.

Defendant also has filed a motion to strike plaintiff's claims based on Title VI regulations. See Defendant's Motion To Strike Plaintiff's Claims Based on 34 C.F.R. Part 100 From The Proposed Pretrial Order, Or In The Alternative, Dismiss Any Such Claims (Doc. #77) filed June 1, 2007. Plaintiff argues that he is entitled to pursue a cause of action under Title VI and the implementing regulations which specifically prohibit discrimination and retaliation. As explained above, Title VI does not include a private right to enforce implementing regulations. See Sandoval, 532 U.S. at 285. Even if plaintiff could pursue a private cause of action under the implementing regulations, neither party has explained how the elements in such an action would differ in any material respect from the elements discussed above. Accordingly, the Court overrules defendant's motion to strike as moot.

discrimination claim, but the Court directs plaintiff to show cause in writing on or before **November 9, 2007 at 5:00 p.m.** why the Court should not grant summary judgment in favor of defendant because the alleged harassment was not so severe, pervasive and objectively offensive that it deprived plaintiff of access to the educational benefits or opportunities provided by the school.

**IT IS FURTHER ORDERED** that Defendant's Motion To Strike Plaintiff's Claims Based on 34 C.F.R. Part 100 From The Proposed Pretrial Order, Or In The Alternative, Dismiss Any Such Claims (Doc. #77) filed June 1, 2007 be and hereby is **OVERRULED as moot**.

Dated this 6th day of November, 2007 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Court